David D. Barnhorn, Esq.
BORRELLI & ASSOCIATES, P.L.L.C.
655 Third Avenue, Suite 1821
New York, New York 10017
Tel.: (212) 679 - 5000
Fax: (212) 679 - 5005
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------------------------X

ANTONIO RAMOS MARIN
and ARTURO LOPEZ,
on behalf of themselves, individually,
and on behalf of all others similarly-situated,

                                   Plaintiffs,

           -against-

MEZZECANTINA LLC
and MICHAEL KRIKORIAN, individually,

                                Defendants.

------------------------------------------------------------------------X

**COMPLAINT**

**Docket No.:**

<u>Jury Trial Demanded</u>

       Plaintiffs, ANTONIO RAMOS MARIN ("Ramos") and ARTURO LOPEZ ("Lopez"), (collectively as "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated, (collectively as "FLSA Plaintiffs"), by and through their attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for their Complaint against MEZZECANTINA LLC ("Mezzecantina") and MICHAEL KRIKORIAN ("Krikorian"), individually, (both, together, as "Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and equitable relief based upon willful violations that the Defendants committed of Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*; (iii) the full payment provisions of the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.2; (iv) the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3); (v) the anti-retaliation provisions of the Conscientious Employee Protection Act ("CEPA"), N.J.S..A. 34-19-1 *et seq.*; (vi) New Jersey common law, as explained in Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980); and (vii) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff Ramos worked for Defendants - - a restaurant and bar and its owner - - as a dishwasher from on or about November 15, 2014 until in or about April 2015, and as a cook from in or about May 2015 until on or about February 20, 2017.  Plaintiff Lopez worked for Defendants as a cook from in or about December 2014 until on or about August 2, 2016.  As described below, for the majority of their employment, Defendants willfully failed to pay Plaintiffs the wages lawfully due to them under the FLSA, NJWHL and NJWPL.  Specifically, Defendants required Plaintiffs to routinely work more than forty hours per workweek, but paid them at their straight-time rate for all hours worked per week, including those that they worked in excess of forty.

3.      Defendants paid and treated all of their cooks and dishwashers, as well as all similarly-situated, non-managerial kitchen staff employees, in the same manner.

4.      Accordingly, Plaintiffs bring this lawsuit against the Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves,

2

individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA. Plaintiffs bring their claims under the NJWHL and NJWPL on behalf of themselves, individually, and on behalf of any FLSA Plaintiff, as that term is defined below, who opts-into this action.

5.    Making matters worse, Defendants retaliated against Plaintiff Ramos for engaging in protected activity under the FLSA, CEPA, and New Jersey common law. Specifically, after Plaintiff Ramos complained to the Defendants about their failure to pay him overtime compensation, Defendants reduced the number of hours that he was scheduled to work each week, as well as his hourly rate of pay for the remainder of his employment. Unable to support himself on this substantially reduced income, on or about February 20, 2017, Plaintiff Ramos was constructively discharged from his employment with Defendants. Accordingly, on an individual basis only, Plaintiff Ramos brings claims for unlawful retaliation in violation of the FLSA, CEPA, and New Jersey common law.

## JURISDICTION AND VENUE

6.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.* The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New Jersey state law.

7.    Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(1), as one or more of the Defendants reside within this judicial district and both reside within the same state, and 28 U.S.C. § 1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

**PARTIES**

8.     At all relevant times herein, Plaintiff Ramos worked for Defendants in New Jersey and was an "employee" entitled to protection as defined by the FLSA, NJWHL, NJWPL, CEPA, and New Jersey common law.

9.     At all relevant times herein, Plaintiff Lopez worked for Defendants in New Jersey and was an "employee" entitled to protection as defined by the FLSA, NJWHL, and NJWPL.

10.     At all relevant times herein, Defendant Mezzecantina was and is a New Jersey corporation with its principal place of business located at 33 First Avenue, Atlantic Highlands, New Jersey 07716.

11.     At all relevant times herein, Defendant Krikorian was and is the owner of Defendant Mezzecantina, who in that capacity, personally managed and oversaw the day-to-day operations of Mezzecantina and was responsible for all matters with respect to determining employees' rates and methods of pay and hours worked, and was responsible for maintaining all employment records.  Furthermore, Defendant Krikorian has and had the power to hire and fire and approve all personnel decisions with respect to Defendant Mezzecantina's employees, including Plaintiffs.  Indeed, he hired Plaintiff Lopez.

12.     At all relevant times herein, Defendants were "employers" within the meaning of the FLSA, NJWHL, NJWPL, CEPA, and New Jersey common law.  Defendant Mezzecantina's qualifying annual business exceeded and exceeds $500,000.00, and Defendants were and are engaged in interstate commerce within the meaning of the FLSA as they buy and sell food and other products that originate in other states, serve patrons from out-of-state, accept payments in cash that naturally moves across state lines, and accept credit cards as a form of payment based on

4

cardholder agreements with out-of-state companies, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

13.    Plaintiffs seek to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages, pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on their own behalf, individually, as well as on behalf of those in the following collective:

> Current and former employees who, during the applicable FLSA limitations period, performed any work for Defendants as non-managerial kitchen workers, or in a similar role, who give consent to file a claim to recover damages for overtime compensation that is legally due to them ("FLSA Plaintiffs").

14.    Defendants treated Plaintiffs and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

15.    At all relevant times, Defendants are and have been aware of the requirement to pay Plaintiffs and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

16.    Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees an overtime premium for all hours worked per workweek above forty in violation of the FLSA.

## BACKGROUND FACTS

17.    Defendant Mezzecantina is a restaurant and bar located in Atlantic Highlands, New Jersey that specializes in pub-style fare.

18.    Defendant Krikorian owns and runs the business on a day-to-day basis.

### *Plaintiff Ramos*

19.    On or about November 15, 2014, Plaintiff Ramos commenced his employment with Defendants as a dishwasher, a position that he held until in or about April 2015.

20.    Plaintiff Ramos then worked for Defendants as a cook from in or about May 2015 until on or about February 20, 2017.

21.    While employed as a dishwasher, Plaintiff Ramos's duties primarily consisted of washing dishes and cookware used in Defendants' restaurant.

22.    While employed as a cook, Plaintiff Ramos's duties primarily consisted of preparing food for Defendants' customers and cleaning his work station.

23.    From on or about November 15, 2014 until in or about April 2015, Defendants required Plaintiff Ramos to work seven days per week, from approximately 10:00 a.m. until 11:00 p.m. on Mondays through Saturdays and from 10:00 a.m. until 9:00 p.m. on Sundays, without receiving an uninterrupted break each day. Thus, by approximation, throughout this period of his employment, Defendants required Plaintiff Ramos to work, and Plaintiff Ramos did work, eighty-nine hours each workweek.

24.    From in or about May 2015 until in or about late November 2016, Defendants required Plaintiff Ramos to work six days per week, from approximately 10:00 a.m. until 11:00 p.m. on Tuesdays through Saturdays and from 10:00 a.m. until 9:00 p.m. on Sundays, without receiving an uninterrupted break each day. Thus, by approximation, throughout this period of his

employment, Defendants required Plaintiff Ramos to work, and Plaintiff Ramos did work, seventy-six hours each workweek.

25.     For example, during the week of November 24 through November 30, 2014, a year during which Defendants' restaurant was open for some of the Thanksgiving holiday, Defendants required Plaintiff Ramos to work, and Plaintiff Ramos did work, from 10:00 a.m. until 11:00 p.m. on Monday through Wednesday, Friday, and Saturday, from 10:00 a.m. until 6:00 p.m. on Thursday, and from 10:00 a.m. until 9:00 p.m. on Sunday, without receiving an uninterrupted break any day, for a total of eighty-four hours worked that week.

26.     As a second example, during the week of November 23 through November 29, 2015, a year during which Plaintiff Ramos did not work on Thursday because Defendants' restaurant was closed for the Thanksgiving holiday, Defendants required Plaintiff Ramos to work, and Plaintiff Ramos did work, from 10:00 a.m. until 11:00 p.m. on Tuesday, Wednesday, Friday, and Saturday, and from 10:00 a.m. until 9:00 p.m. on Sunday, without receiving an uninterrupted break any day, for a total of sixty-three hours worked that week.

27.     From on or about November 15, 2014 until in or about April 2015, Defendants paid Plaintiff Ramos $8.50 per hour for all hours that he worked each week.

28.     From in or about May 2015 until in or about late November 2016, Defendants paid Plaintiff Ramos $12.00 per hour for all hours that he worked each week.

29.     Thus, throughout all but the last approximately three months of his employment, Defendants did not pay Plaintiff Ramos at the overtime rate of one and one-half times his regular rate of pay for any hours that he worked in excess of forty per week, and instead paid him at his straight-time rate for those hours.

30.     Defendants paid Plaintiff Ramos on a bi-weekly basis.

7

31.    Defendants did not simply decide to begin complying with the law during the final months of Plaintiff Ramos's employment. Far from it. Indeed, making matters much worse, in or about late November 2016, Plaintiff Ramos complained to Defendant Krikorian that Defendants were not paying him an overtime premium for his hours worked beyond forty each week, as required by law.

32.    Because of his complaint, Defendants retaliated against Plaintiff Ramos by drastically reducing his scheduled hours each week for the remainder of his employment.

33.    Indeed, beginning in or about late November 2016 and continuing through on or about February 20, 2017, Defendants permitted Plaintiff Ramos to work only four days per week, from 10:00 a.m. until 11:00 a.m. on Wednesdays through Saturdays.

34.    Moreover, from in or about late November 2016 through on or about February 20, 2017, Defendants reduced Plaintiff Ramos's pay from $12.00 to $10.00 per hour for the few hours that Defendants scheduled him to work.

35.    Thus, as a result of his substantially reduced income, Plaintiff Ramos was not able to support himself, and was constructively terminated from his employment with Defendants on or about February 20, 2017.

**_Plaintiff Lopez_**

36.    In or about December 2014, Plaintiff Lopez commenced his employment with Defendants as a cook, a position which he held until on or about August 2, 2016.

37.    Throughout his employment as a cook, Plaintiff Lopez's duties primarily consisted of preparing food for Defendants' customers and cleaning his work station. Lopez also performed other duties as necessary, including manual tasks such as repairing Defendants' plumbing.

38.     From in or about December 2014 until in or about mid-February 2015, Defendants required Plaintiff Lopez to work seven days per week, from approximately 10:00 a.m. until 12:00 midnight, while typically receiving a thirty minute break each day.  Thus, by approximation, throughout this period of his employment, Defendants required Plaintiff Lopez to work, and Plaintiff Lopez did work, ninety-four and one-half hours each workweek.

39.     From in or about mid-February 2015 until in or about April 2015, Defendants required Plaintiff Lopez to work five days per week, from approximately 10:00 a.m. until 12:00 midnight on Tuesdays, and from 11:00 a.m. until 12:00 midnight on Wednesdays through Saturdays, without receiving an uninterrupted break each day.  Thus, by approximation, throughout this period of his employment, Defendants required Plaintiff Lopez to work, and Plaintiff Lopez did work, sixty-six hours each workweek.

40.     From in or about May 2015 until on or about August 2, 2016, Defendants required Plaintiff Lopez to work six days per week, from approximately 11:00 a.m. until 11:00 p.m. on Tuesdays through Thursdays, from 11:00 a.m. until 12:00 midnight on Fridays and Saturdays, and from 10:00 a.m. until 10:00 p.m. on Sundays, without receiving an uninterrupted break each day.  Thus, by approximation, throughout this period of his employment, Defendants required Plaintiff Lopez to work, and Plaintiff Lopez did work, sixty-six to seventy-three and one-half hours each workweek.

41.     For example, during the week of December 15 through December 21, 2014, Defendants required Plaintiff Lopez to work, and Plaintiff Lopez did in fact work, from 10:00 a.m. until 12:00 midnight for all seven days that week, while receiving a thirty minute break each day, for a total of ninety-four and one-half hours worked that week.

42.     As a second example, during the week of July 25 through July 31, 2016, Defendants required Plaintiff Lopez to work, and Plaintiff Lopez did in fact work, from 11:00 a.m. to 11:00 p.m. on Tuesday through Thursday, from 11:00 a.m. to 12:00 midnight on Friday and Saturday, and from 10:00 a.m. to 10:00 p.m. on Sunday, without receiving an uninterrupted break any day, for a total of seventy-four hours worked that week.

43.     Throughout his employment, Defendants paid Plaintiff Lopez $12.00 per hour for all hours that he worked each week.

44.     Thus, throughout his employment, Defendants did not pay Plaintiff Lopez at the overtime rate of one and one-half times his regular rate of pay for any hours that he worked in excess of forty per week, and instead paid him at his straight-time rate for those hours.

45.     Defendants paid Plaintiff Lopez on a bi-weekly basis.

46.     Defendants treated Plaintiffs and all FLSA Plaintiffs in the manner described herein.

47.     Each hour that Plaintiffs and FLSA Plaintiffs worked was for the Defendants' benefit.

48.     Defendants acted in the manner described herein so as to minimize their overhead and labor costs while maximizing profits.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

49.     Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

50.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

51.     As described above, Defendants are employers within the meaning of the FLSA, while Plaintiffs and FLSA Plaintiffs are employees within the meaning of the FLSA.

52.     As also described above, Plaintiffs and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendants failed to compensate Plaintiffs and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

53.     Defendants willfully violated the FLSA.

54.     Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

55.     Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages, attorneys' fees, and their costs and disbursements in this action for Defendants' violation of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the NJWHL*

56.     Plaintiffs, and any FLSA Plaintiff who opts-in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

57.     NJWHL § 34:11-56a *et seq.* requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for any hours worked exceeding forty in a workweek.

58.     As described above, Defendants are employers within the meaning of the NJWHL, while Plaintiffs, and any FLSA Plaintiff who opts-in to this action, are employees within the meaning of the NJWHL.

11

59.     As also described above, Plaintiffs, and any FLSA Plaintiff who opts-in to this action, worked in excess of forty hours each week, yet the Defendants failed to compensate them in accordance with the NJWHL's overtime provisions.

60.     Plaintiffs, and any FLSA Plaintiff who opts-in to this action, are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their regular rate of pay.

61.     Plaintiffs, and any FLSA Plaintiff who opts-in to this action, are also entitled to liquidated damages, interest, attorneys' fees, and their costs and disbursements in this action for Defendants' violations of the NJWHL's overtime provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Full Amount of Wages under the NJWPL*

62.     Plaintiffs, and any FLSA Plaintiff who opts-in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

63.     NJWPL § 34:11-4.2 requires employers to pay the full amount of wages due to employees at least twice during each calendar month, on regular pay days that are designated in advance by the employer.

64.     As described above, Defendants are employers within the meaning of the NJWPL, while Plaintiffs, and any FLSA Plaintiff who opts-in to this action, are employees within the meaning of the NJWPL.

65.     As also described above, Defendants failed to pay Plaintiffs, and any FLSA Plaintiff who opts-in to this action, the full amount of wages due to them each pay period.

66.     Plaintiffs, and any FLSA Plaintiff who opts-in to this action, are entitled to payment for all wages due to them that were not paid.

67.     Plaintiffs, and any FLSA Plaintiff who opts-in to this action, are also entitled to liquidated damages, interest, attorneys' fees, and their costs and disbursements in this action for Defendants' violations of the NJWPL's overtime provisions.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unlawful Retaliation under the FLSA on behalf of Plaintiff Ramos*

67.     Plaintiff Ramos repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

68.     Under FLSA § 215(a)(3), it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under . . . this chapter, or has testified or is about to testify in any such proceeding."

69.     As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff Ramos is an employee within the meaning of the FLSA.

70.     As also described above, after Plaintiff Ramos lodged a good faith complaint with Defendants about their failure to pay him proper overtime compensation, Defendants retaliated by cutting his hours and his rate of pay and constructively terminating his employment.

71.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff Ramos has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

72.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff Ramos has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

73.     Additionally, Plaintiff Ramos is entitled to liquidated damages, as well as punitive damages for Defendants' malicious, willful, and wanton violations of the FLSA's anti-retaliation provision, and all other appropriate forms of relief, including reasonable attorneys' fees and costs and disbursements in this action.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unlawful Retaliation under CEPA on behalf of Plaintiff Ramos*

74.     Plaintiff Ramos repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

75.     Pursuant to N.J.S.A. 34:19-3(c), it is unlawful to retaliate "against an employee because the employee . . . [o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law . . . or . . .is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment."

76.     As described above, Defendants are employers within the meaning of CEPA, while Plaintiff Ramos is an employee within the meaning of CEPA.

77.     As also described above, after Plaintiff Ramos lodged a good faith complaint with Defendants about their failure to pay him proper overtime compensation that he believed to be a violation of law and a clear mandate of New Jersey's public policy, Defendants willfully retaliated by cutting his hours and his rate of pay and constructively terminating his employment.

78.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of CEPA, Plaintiff Ramos has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

79.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of CEPA, Plaintiff Ramos has suffered, and continues to suffer, severe mental anguish

and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

80.    Additionally, Plaintiff Ramos is entitled to punitive damages for Defendants' malicious, willful, and wanton violations of CEPA's anti-retaliation provision, and all other appropriate forms of relief, including reasonable attorneys' fees and costs and disbursements in this action.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Violation of New Jersey Common Law on behalf of Plaintiff Ramos*

81.    Plaintiff Ramos repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

82.    The foregoing facts and circumstances demonstrate that Defendants have violated their common law obligations set forth by the New Jersey Supreme Court in <u>Pierce v. Ortho Pharmaceutical Corp.</u>, 84 N.J. 58 (1980).

83.    As described above, Defendants retaliated against Plaintiff Ramos for objecting to Defendants' failure to pay him proper overtime compensation, which he believed to be a violation of a clear mandate of New Jersey's public policy, by constructively terminating his employment.

84.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New Jersey common law, Plaintiff Ramos has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

85.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New Jersey common law, Plaintiff Ramos has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation,

15

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

86.    Additionally, Plaintiff Ramos is entitled to punitive damages for Defendants' malicious, willful, and wanton violations of New Jersey common law, and all other appropriate forms of relief, including costs and disbursements in this action.

## DEMAND FOR A JURY TRIAL

80.    Pursuant to FRCP 38(b), Plaintiffs and FLSA Plaintiffs demand a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and FLSA Plaintiffs demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New Jersey laws;

b.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.    An order restraining Defendants from any retaliation against Plaintiffs and FLSA Plaintiffs for participation in any form in this litigation;

d.    Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA

claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.    All damages that Plaintiffs and FLSA Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiffs and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

f.    Liquidated damages and any other statutory penalties as recoverable under the FLSA, NJWHL and NJWPL;

g.    All compensatory damages that Plaintiff Ramos has individually sustained as a result of the Defendants' unlawful retaliatory conduct, including back pay, front pay, damages to compensate Plaintiff Ramos for harm to his professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that he would have received but for the Defendants' conduct, and any other out-of-pocket losses that Plaintiff Ramos has incurred or will incur;

h.    Punitive damages, as provided by law, in connection with Plaintiff Ramos's individual retaliation claims;

i.    Designation of Plaintiffs and their counsel as collective action representatives under the FLSA;

j.    Awarding Plaintiffs and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and an award of a service payment to Plaintiffs;

k.    Pre-judgment and post-judgment interest, as provided by law; and

l.    Granting Plaintiffs and FLSA Plaintiffs such other and further relief as this Court

finds necessary and proper.

Dated: New York, New York
       July 7, 2017

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiffs*
655 Third Avenue, Suite 1821
New York, New York 10017
Tel.: (212) 679 - 5000
Fax: (212) 679 - 5005

By: _____
     DAVID D. BARNHORN (DB 9685)